■ ROBERT STONE et al., Respondents, v KERRY R. WILLIAMS et al., Appellants. — In a negligence action to recover damages for personal injuries, etc., defendants The Meadville Corp., Merit Oil Corporation, formerly known as Service Station Management Corp., Bunker Realty Corp. and Save Way Bay, Inc., appeal as limited by their brief, from so much of a judgment of the Supreme Court, Richmond County (Hurowitz, J.), entered March 24, 1982, as awarded plaintiffs judgment against them, upon a jury verdict, and defendants Kerry Williams and Chareen Stevens appeal, as limited by their brief, from so much of the same judgment as awarded damages to plaintiff Robert Stone as against them in the principal sum of $200,000. Judgment reversed, insofar as appealed from, on the law, without costs or disbursements, complaint as against The Meadville Corp., Merit Oil Corporation, Bunker Realty Corp. and Save Way Bay, Inc., dismissed, action as against Kerry Williams and Chareen Stevens severed, and new trial granted as to Williams and Stevens on the issue of plaintiff Robert Stone's damages only, unless within 30 days after service upon plaintiff Robert Stone of a copy of the order to be made hereon, with notice of entry, he shall serve and file in the office of the clerk of the Supreme Court, Richmond County, a written stipulation consenting to reduce the verdict in his favor as to damages to the principal sum of $100,000 and to entry of an amended judgment accordingly. In the event he so stipulates, then the judgment, as so reduced and amended, is affirmed, without costs or disbursements. Defendants The Meadville Corp., Merit Oil Corporation, Bunker Realty Corp. and Save Way Bay, Inc., owed no duty to their patrons to direct traffic within the confines of their service station (see *Pulka v Edelman,* 40 NY2d 781) nor may it be said that their failure to take precautionary measures was proven to have been a causative factor of the accident. There was no basis

whatever in the evidence for finding that the accident was caused by anything other than the loss of control of the vehicle operated by defendant Williams when, as he admitted, the accelerator stuck. "The premises 'merely furnished the condition or occasion for the occurrence of the event rather than one of its causes'" (*Margolin v Friedman,* 43 NY2d 982, 983, quoting from *Sheehan v City of New York,* 40 NY2d 496, 503; see, also, *Weber v City of New York,* 24 AD2d 618, affd 17 NY2d 790; *Tauraso v Texas Co.,* 275 App Div 856, affd 300 NY 567; cf. *Derdiarian v Felix Contr. Corp.,* 51 NY2d 308). The verdict in favor of Robert Stone as against Williams and Stevens was excessive to the extent indicated. Weinstein, Bracken and Niehoff, JJ., concur.

Gibbons, J. P., dissents and votes to affirm the judgment, insofar as appealed from, with the following memorandum: On April 3, 1977, at approximately 12:50 P.M., Robert Stone went to the Merit service station located at 951 Bay Street in Staten Island, to purchase gas. Nit Tanvejsilp, the assistant manager of the station, and one other employee were on duty at the time. The station was, on the date in question, bounded by four streets and contained four service islands. According to Mr. Tanvejsilp, at the time Mr. Stone's car was being serviced, there were about eight cars inside the gas station to purchase gas. Because Mr. Stone had asked to have his car filled, Mr. Tanvejsilp set the hose on automatic and went to another island to service another car. He returned to Mr. Stone's car when he heard a click, indicating that the tank was filled, whereupon he removed the hose and stepped onto the island to replace it on the pump. At that moment Mr. Stone gave him a credit card and then proceeded to the rear of his car to determine whether the gas cap had been replaced securely. As he pulled down the license plate to check the gas cap, he was struck by the rear of another car driven by Kerry Williams. According to Mr. Stone, at no time prior to the accident did he hear or see the other car, nor did he hear a horn or brakes, nor did anyone call out to warn him of the moving vehicle. Mr. Tanvejsilp testified that he observed the Williams' car enter the station and then stop. He turned his face away from the Williams' car and then heard it "back up fast". He did not actually see the car hit Mr. Stone. The jury assessed Mr. Stone's damages for personal injuries at $200,000. It apportioned liability among the defendants, holding that the Merit service station, constituting defendants The Meadville Corp., Merit Oil Corporation, Bunker Realty Corp. and Save Way Bay, Inc., was 20% responsible for the accident. Citing *Pulka v Edelman* (40 NY2d 781), the majority maintains that "[d]efendants The Meadville Corp., Merit Oil Corporation, Bunker Realty Corp. and Save Way Bay, Inc. owed no duty to their patrons to direct traffic within the confines of their service station". *Pulka* (*supra*) is inapposite because there the issue was whether the operators of a parking garage had a duty to protect off-premises pedestrians on a neighboring sidewalk. As the Court of Appeals noted, the relationship of the garage to off-premises pedestrians was "somewhat tenuous", and that, therefore, the garage had no duty to protect such pedestrians from the tortious acts of its patrons (*Pulka v Edelman, supra,* p 784). In the case at bar, the injured party was not off premises. Being a patron on the Merit service station's property, plaintiff Robert Stone was entitled to that protection that is owed to any person who comes onto another's property — "reasonable care under the circumstances" (*Basso v Miller,* 40 NY2d 233, 241). Every landowner bears such a duty to those on his property (*Basso v Miller, supra; Muallem v City of New York,* 82 AD2d 420, affd 56 NY2d 866). "Once the existence of a duty has been established, the inquiry turns to the separate question of the scope of that duty or the standard of care to which a defendant will be held in order to satisfy the duty he owes to the plaintiff" (*Muallem v City of New York, supra,* p 424). Generally, "[w]hat safety precautions may reasonably be required of a landowner is almost always a question of

fact for the jury. Conceivably, in assessing the reasonableness of the landowner's conduct, the jury might take into account such variables as the seriousness of the risk and the costs of the various available safety measures" (*Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 520, n 8). Following these principles, it has been held that a gasoline service station owner or operator must take "reasonable precautions to protect his customers from injuries which could reasonably be anticipated" (*Ouimet v Humble Oil & Refining Co.,* 55 AD2d 855, 855-856). I can perceive of no reason to except this case from the general rule that leaves it for the jury to determine, as questions of fact, the standard of care to which the Merit service station should be held and whether that standard has been violated or not. The mere fact that only two employees were on duty when Mr. Stone was injured, at a very busy time of day, might be taken as violative of a standard which would dictate that enough attendants be on hand so as to minimize the number of cars waiting to be serviced and to control the traffic in the station. Moreover, there was testimony, from Mr. Tanvejsilp and Lloyd Cornelius, the manager of the station, that according to company manuals, a customer should never be allowed to back up his car to a pump, and one car should be serviced at a time. A one page document entitled "Company Safety Rules", which is posted in each station, was admitted into evidence. It states in pertinent part: "The following are the most frequent causes of accidents at our stations, along with some suggestions for avoiding them * * * Damages to and by Vehicles * * * 2. Watch out for moving vehicles at the station." It is well recognized that the regulations adopted by an employer may be some evidence of the standard of care required and, thus, of the negligent nature of any act or omission violating those regulations (2 Harper and James, Law of Torts, § 17.3, p 981, n 17; 65 CJS, Negligence, § 16, p 601; see *Wood v American Locomotive Co.,* 250 App Div 816; cf. *Trimarco v Klein,* 56 NY2d 98, 105-106). The evidence most favorable to plaintiffs supports a finding that the Merit service station failed to adequately control the traffic congestion and movement at its station, in violation of its own regulations and in violation of a reasonable standard of care. That only two employees were on duty at the time and that Mr. Tanvejsilp admittedly saw the Williams' car come into the station but then ignored it are undisputed facts which support a finding of negligence. The majority also holds, as a matter of law, that no act or omission on Merit's part was "a causative factor of the accident". Reliance is placed on the case of *Margolin v Friedman* (43 NY2d 982, 983), wherein the Court of Appeals held, with respect to an accident in a car wash, that "[t]he premises 'merely furnished the condition or occasion for the occurrence of the event rather than one of its causes' " (quoting from *Sheehan v City of New York,* 40 NY2d 496, 503). To establish liability plaintiffs must, of course, show that the service station's negligence was a proximate cause of the accident (*Sheehan v City of New York,* 40 NY2d 496, 501, *supra*). Generally, conduct is a proximate cause of an accident when it is "a substantial causative factor in the sequence of events" leading to the accident (*Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 520, *supra*). "Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence * * * Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve" (*Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315). The *Derdiarian* case is instructive. In that case, an operator of a car had an epileptic seizure. The automobile crashed through a wooden barricade and entered an excavation site, striking the plaintiff, who was working at the site. The principal issue on

appeal was whether the defendant contractor's inadequate safety precautions were a proximate cause of the accident. The Court of Appeals held that, in these circumstances, whether the driver's actions were a superseding cause which interrupted the causal chain was a question of fact. The court found that a trier of fact "could have concluded that the foreseeable, normal and natural result of the risk created by Felix [the contractor] was the injury of a worker by a car entering the improperly protected work area" (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 316, *supra*). As we have already seen in the case at bar, there is evidence which would support the view that the Merit service station failed to properly supervise and control the congestion and flow of traffic in the station. In particular, the use of only two employees at the time of the accident, the service of more than one vehicle at a time, and the failure of Mr. Tanvejsilp to prevent Mr. Williams from backing up, when he admittedly saw the latter enter the station and stop, are factors from which the jury could conclude that the service station was inadequately protected. Taking the analysis to the next step, the finder of fact could reasonably and fairly conclude that Mr. Williams' action of backing his car up was a foreseeable, normal and natural result of Merit's failure to adequately control and direct the traffic on the premises. I therefore conclude that the record sufficiently supports a finding of proximate cause and, further, that the ultimate finding of liability made by the jury was not against the weight of the evidence. The case of *Margolin v Friedman* (43 NY2d 982, *supra*), relied on by the majority, is distinguishable. In that case, the plaintiff was struck at the exit of a car wash when a patron, having already had his car washed, mistakenly stepped on the accelerator instead of the brake (see *Margolin v Friedman*, 57 AD2d 763, affd 43 NY2d 982, *supra*). The plaintiff alleged that the car wash operator was negligent with respect to the design and maintenance of the premises and because of the absence of a warning sign. It is clear, as both the First Department and the Court of Appeals found, that, under the circumstances presented, the alleged negligence was not the proximate cause of the accident. In this case, Mr. Williams intentionally backed up to the pump, an action which, according to Merit's own employee, Mr. Williams should not have been allowed to do. It was for the jury to determine if the negligence of the Merit service station or the employees on duty at the time was a substantial factor leading to the backing up of Williams' vehicle. The majority also finds that the $200,000 award to Mr. Stone for his injuries was excessive. At the time of the accident and at the time of the trial Mr. Stone was in his fifties and a vice-president for B.C.A. Credit Information, Inc. His responsibilities with the company required a constant public exposure. Prior to the accident, Mr. Stone participated in active recreational endeavors, including tennis and bowling. It is uncontested that as a result of the accident Mr. Stone suffered an undisplaced simple fracture of the right fibula, below the knee, and a marked effusion of the right knee. More critically, his left hand was virtually mangled. Approximately, five millimeters of flesh were sheared from the top of his left thumb, with accompanying damage to blood vessels and nerves. He suffered a comminuted compound fracture of the middle finger; that is, bone in the middle finger was shattered and pierced through the flesh and skin. The ring finger was just hanging from the joint with only a small piece of skin being attached to it. The blood vessels and nerves of the ring finger were damaged beyond repair. Despite efforts to save the finger, because of the onset of a gangrenous condition, amputation was eventually required. The orthopedic surgeon who treated Mr. Stone testified that the latter sustained a 40 to 50% loss of the use of his left hand, predicated upon a 40% loss of the use of his thumb, 15% loss of use of the middle finger, and 100% loss of use of the ring finger. In the expert's view, this loss in use of the left hand was permanent. The scope of the appellate review with respect to a damages verdict was set

forth in 1812 by the Supreme Court of New York, then our highest court, in an opinion by Chief Judge Kent, as follows: "The question of damages was within the proper and peculiar province of the jury. It rested in their sound discretion, under all the circumstances of the case, and unless the damages are so outrageous as to strike every one with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partiality or corruption, we cannot, consistently with the precedents, interfere with the verdict. It is not enough to say, that in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries" (*Coleman v Southwick,* 9 Johns 45, 51). To put Chief Judge Kent's views into the verbiage of the modern cases, "[t]o warrant interference with a jury's assessment of damages, the excessiveness or inadequacy of the award must be such as to shock the conscience of the court" (*Petosa v City of New York,* 63 AD2d 1016, 1016-1017). Under this standard of review, the jury verdict was not excessive. We usurp the jury's function when, in circumstances such as are present here, we hold that a jury's determination of damages was wrong. Who are we to say that a man who has his leg broken and at the same time has several fingers torn apart, and who then must go through the remainder of his life with a mutilated hand, having lost some 50% of its use, is entitled to $100,000, but not $200,000? It is noteworthy that the Judge who presided at the trial, and who observed the nature and extent of the injuries, denied defendants' motions to set aside the verdict as excessive. He was in a better position than we are to review the verdict, and, absent an abuse of discretion, we should not interfere with his conclusion (*Kligman v City of New York,* 281 App Div 93). I, for one, do not possess a conscience which is shocked by the verdict in this case. For the above reasons, the judgment, insofar as appealed from, should be affirmed. I, therefore, respectfully dissent.