■ RAYMOND M. BAKER, JR., et al., Plaintiffs, v SWEET ASSOCIATES, INC., et al., Defendants, and SMITH & MAHONEY, P. C., Defendant and Third-Party Plaintiff-Appellant. MOISTURE BARRIERS, INC., Third-Party Defendant-Respondent. [717 NYS2d 426] —Cardona, P. J. Appeals (1) from an order of the Supreme Court (Marinelli, J.), entered June 14, 1999 in Albany County, which denied third-party plaintiff's motion to, *inter alia*, set aside the verdict, and (2) from that part of a judgment of said court, entered January 11, 2000 in Albany County, upon a verdict rendered in favor of third-party defendant against third-party plaintiff.

In October 1995, defendant Albany Water Board (hereinafter the Board) entered into a construction contract with defendant Sweet Associates, Inc. for the rehabilitation of the Feura Bush Filtration Plant owned by it and defendant City of Albany. Sweet was retained as the general contractor to, *inter alia*, repair thousands of concrete panels underlying the roof which were cracked and spalled as well as to replace the outer roof membrane. Defendant Smith & Mahoney, P. C. was retained as the engineer to prepare construction specifications for the project providing for, *inter alia*, the replacement of all concrete which was spalling and missing from the panels.

Sweet engaged one subcontractor to remove the old roof membrane which was completed without incident. It also hired third-party defendant, Moisture Barriers, Inc., to install insulation and a new rubber membrane over the existing concrete decking. When employees of Moisture Barriers began moving

around the roof, certain concrete panels started to crack raising concerns about safety. In response, Smith & Mahoney created a roof staging and access plan identifying those portions of the concrete decking which were safe to walk upon. Moisture Barriers was instructed to follow the plan.

Moisture Barriers completed most of the installation before suspending work for the winter in December 1995. As for the unfinished portions of the roof, Moisture Barriers laid portions of the rubber membrane loosely over the insulation board so that it would not be exposed to the elements. In February 1996, after being notified that a portion of the membrane had blown back exposing the insulation, Moisture Barriers sent plaintiff Raymond M. Baker, Jr. (hereinafter plaintiff) and another employee to the site to fix the problem. While plaintiff, in the process of removing insulation, was standing on top of the roof over a concrete panel that had not been repaired, the panel gave way. Plaintiff fell approximately 30 feet sustaining personal injuries.

In July 1996, plaintiff and his wife, derivatively, commenced this action against the Board, the City and Sweet (hereinafter collectively referred to as defendants) alleging causes of action for negligence and violations of the Labor Law. Defendants, in turn, commenced a third-party action against Moisture Barriers for contribution and/or indemnification. Plaintiffs commenced a separate action against Smith & Mahoney which was consolidated with their original action.* Smith & Mahoney, in turn, commenced a third-party action against Moisture Barriers for contribution and/or indemnification. In response, Moisture Barriers asserted a counterclaim against Smith & Mahoney for the same relief.

At the close of proof at trial, Smith & Mahoney moved for a directed verdict requesting that Moisture Barriers' counterclaim be dismissed. Following denial of that motion, the jury rendered a verdict awarding plaintiffs the sum of $423,200 and finding Smith & Mahoney liable to Moisture Barriers for one half of that amount. Thereafter, Smith & Mahoney made a motion pursuant to CPLR 4404 (a) to, *inter alia,* set aside the verdict and dismiss the counterclaim of Moisture Barriers. Supreme Court denied the motion resulting in these appeals.

Initially, Smith & Mahoney contends that Moisture Barriers failed to adduce any evidence at trial establishing a prima facie case of negligence against it and, therefore, Supreme Court should have directed a verdict in its favor. As part of our

---

* Plaintiffs eventually withdrew their claims against Smith & Mahoney.

analysis, we must determine Smith & Mahoney's responsibilities with regard to the construction and whether it breached a duty owing to plaintiff. The construction contract is instructive on this issue and provided, in pertinent part, as follows: "ENGINEER will make visits to the site at intervals appropriate to the various stages of construction as ENGINEER deems necessary in order to observe as an experienced and qualified design professional the progress that has been made and the quality of the various aspects of CONTRACTOR's executed Work. Based upon information obtained during such visits and observations, ENGINEER will endeavor for the benefit of OWNER to determine, in general, if the Work is proceeding in accordance with the Contract Documents. ENGINEER will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. ENGINEER's efforts will be directed toward providing for OWNER a greater degree of confidence that the completed Work will conform generally to the Contract Documents. On the basis of such visits and on-site observations, ENGINEER will keep OWNER informed of the progress of the Work and will endeavor to guard OWNER against *defective* Work. ENGINEER's visits and on-site observations are subject to all the limitations on ENGINEER's authority and responsibility set forth in paragraph 9.13, and particularly, but without limitation, during or as a result of ENGINEER's on-site visits or observations of CONTRACTOR's Work ENGINEER will not supervise, direct, control or have authority over or be responsible for CONTRACTOR's means, methods, techniques, sequences or procedures of construction, or the safety precautions and programs incident thereto, or for any failure of CONTRACTOR to comply with Laws and Regulations applicable to the furnishing or performance of the Work" (emphasis in original). From the above, it is clear that Smith & Mahoney's obligations were to the owner, that is the Board and City, and not to Sweet, Moisture Barriers or plaintiff, the latter's employee. It is also clear from this paragraph, as well as paragraph 9.13 referenced therein, that Smith & Mahoney had no right to control Sweet's performance of the repairs and had a duty to inspect Sweet's work only to ensure compliance with the contract documents after the repair work was completed.

Significantly, the evidence in the record reveals that Sweet had not completed the repairs to all of the concrete panels at the time of the accident. The minutes of a meeting held on January 5, 1996 among the various parties involved in the construction discloses that the City imposed a 4,000-square-foot limitation on the scope of the repair work and that, due to this limitation, Sweet had not repaired all of the panels at that

time. It is undisputed that panel G32, which collapsed under plaintiff's weight, had not yet been repaired by Sweet. The fact that this panel was located in the vicinity of other panels that had been repaired and next to one that had been replaced does not, without more, establish a breach of duty by Smith & Mahoney.

Likewise, there is no proof in this record that the construction specifications prepared by Smith & Mahoney with respect to the repair of the concrete panels were defective or that any such defect proximately caused the accident. Russell Galgana, a mechanical engineer for Smith & Mahoney, testified that 90% of the approximately 2,600 panels required repair. He stated that the specifications called for cleaning the exposed concrete substrate, removing rust from the exposed steel rebar, applying a bonding agent as well as a repair concrete mortar mix, and coating the surface of the panel with a sealant to return it to its original profile. He indicated that Smith & Mahoney did not create a survey identifying each panel that required repair due to the continuing deterioration of the concrete panels during the course of construction. He noted, however, that Smith & Mahoney did maintain a grid identifying the concrete panels that had been repaired which it reconciled with Sweet.

Edward Keegan, an engineer who testified on behalf of Moisture Barriers, did not disagree with the repair method outlined in the construction specifications or the preparation of the post-repair grid. He opined, however, that Smith & Mahoney should have created a "plank by plank" survey to be used prior to the commencement of the work detailing the panels which required repair and the extent to which they were damaged. He indicated on direct examination that the failure to do so constituted a deviation from standard engineering practice; however, he subsequently stated that a "plank by plank" survey was not the only acceptable means of determining whether particular panels were in need of repair.

Under the particular circumstances presented herein, we do not find that Keegan's testimony establishes that Smith & Mahoney breached a duty of care which proximately caused plaintiff's injuries. It is undisputed that, at the time of the accident, representatives of Moisture Barriers knew that Sweet had not completed the repairs to the concrete panels due to the 4,000 square foot limitation. Christian Schwenk, the employee who accompanied plaintiff on the roof, testified that he knew of the staging and access plan prepared by Smith & Mahoney but did not inform plaintiff of the plan or follow it nor did he

instruct plaintiff where to walk on the roof. Schwenk stated that, prior to walking on the roof, he did not check to see which panels had been repaired and knew that he and plaintiff were walking over panels that had not been repaired. The accident was clearly a result of the foregoing deficiencies. Insofar as the jury found Smith & Mahoney liable for 50% of the damages awarded to plaintiffs, we are of the view that "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499). Accordingly, Smith & Mahoney's motion for a directed verdict should have been granted and Moisture Barrier's counterclaim against it dismissed. In light of our disposition, we need not address Smith & Mahoney's remaining contentions.

Crew III, Peters, Rose and Lahtinen, JJ., concur. Ordered that the order is reversed, on the law, without costs, and motion to set aside the verdict granted. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as imposed liability against defendant Smith & Mahoney, P. C. and on the third-party counterclaim; third-party counterclaim dismissed; and, as so modified, affirmed.