Armstrong v Foxcroft Nurseries (2004 NY Slip Op 50053(U))

[*1]

Armstrong v Foxcroft Nurseries

2004 NY Slip Op 50053(U)

Decided on February 5, 2004

Supreme Court, Rensselaer County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 5, 2004

Supreme Court, Rensselaer County
 SHANE ARMSTRONG, Plaintiff,
against
FOXCROFT NURSERIES, INC., Defendant.
Index No. 194587

APPEARANCES: E. Stewart Jones P.L.L.C.
Attorneys for the Plaintiff
(George E. Lamarche, III, Esq., Of Counsel)
Jones Building - 28 Second Street
Troy, New York 12181
Ainsworth, Sullivan, Tracy, Knauf, Warner & Ruslander, P.C.
Attorneys for the Defendant
(Maria C. Tebano, Esq., Of Counsel)
Brandon Place
403 New Karner Road
P.O. Box 12849
Albany, New York 12212-2849

JAMES B. CANFIELD, J.
Defendant Foxcroft Nurseries, Inc. (Foxcroft) moves pursuant to CPLR 4404(a) for an order setting aside the jury verdict and judgment entered in this case and directing that judgment be entered in favor of Foxcroft upon the ground that it is entitled to judgment as a matter of law, or, in the alternative, for a new trial, upon the ground that the verdict is contrary to the weight of the evidence, and manifestly excessive.
As the one challenging the alleged excessiveness of the jury's award of damages, Foxcroft supports its motion with a series of decisions reviewing awards in cases involving similar injuries to the ones suffered by plaintiff, Shane Armstrong (Armstrong). Foxcroft urges that the cited decisions demonstrate that the award in this case "deviates materially from what is reasonable compensation" (CPLR 5501[c]; Ordway v Columbia County Agricultural Society, 273 AD2d 635, 636; Lolik v Big V Supermarkets, 266 AD2d 759, 761).
Surprisingly, the first case Foxcroft cites, Rogers v Parise, 75 AD2d 513 actually suggests that the $575,000 pain and suffering award in this case does not deviate materially from reasonable compensation for one who has suffered a comminuted fracture of the tibia and fibula. [*2]Rogers declined to reduce a 1979 jury verdict of $200,000 for the pain and suffering of the rather unsympathetic plaintiff in that case who was exaggerating his injuries. According to the United States Department of Labor, Bureau of Labor Statistics Inflation Calculator (http://www.bls.gov/home.htm) , $200,000 in 1979 would have the same buying power as $506,887 does today. The $575,000 awarded to Armstrong in this case does not deviate materially from the present day value of the Rogers award. Nor is Rogers the only case cited by defendant that proves the opposite. In Johnston v Joyce, 192 AD2d 1124, the Fourth Department found that $500,000 was the maximum reasonable pain and suffering award in 1993. In present dollars that equals $636,678, which is more than the $575,000 that defendant now argues is excessive.
Armstrong supplies other cases that confirm that the pain and suffering award in this case is not excessive. In Carl v Daniels, 268 AD2d 395 the Appellate Division set the pain and suffering award at $4,800,000. The injuries there were not that much more significant than Armstrong's in this case. In Patterson v Kummer Development Corporation, 302 AD2d 873, 874, the court found that $1,000,000 was reasonable for very similar injuries. An award of $709,222 was held to be reasonable in Brownell v City of New York, 277 AD2d 31. A pain and suffering award of $750,000 was imposed by the court in Holland v Gaden, 260 AD2d 604 and $850,000 was affirmed as not excessive in Cranston v Oxford Resources Corp., 173 AD2d 757, 758 - 759.
 Rogers and Johnston and the cases cited by Armstrong appear to prove that the $575,000 award is not excessive and Foxcroft's motion should be denied. Nevertheless, along with the Rogers and Johnston and many irrelevant cases, defendant cites four similar cases which actually appear to establish that the $575,000 award is wildly excessive. Jandt v Abele, 116 AD2d 699 declared that a $100,000 award was excessive and reduced it to $65,000. Stone v Williams, 97 AD2d 509 reduced the total damages from $200,000 to $100,000. Winther v Railroad Maintenance Corporation, 169 AD2d 591, 592, is more generous but establishes that all damages in this type of case cannot exceed $345,000 (reducing the award from $1,395,000). Zavurov v City of New York, 241 AD2d 491, 492, holds that $600,000 in pain and suffering is excessive and must be reduced to $300,000.
The decisions directly contradict one another and simply cannot be reconciled. Thus, the Court could justify either granting or denying this motion by citing some of the cases and turning a blind eye on the rest. The contradictory decisions demonstrate that the system that the courts have heretofore been relying on to analyze pain and suffering awards does not deliver a coherent result. The time has come to determine why the system does not work and correct it so that these motions can be decided in a coherent and predictable fashion.
One symptom of the problem is that the decisions are often also internally inconsistent. They set forth a very restrictive standard before judicial interference with jury awards is allowed and then apply a less restrictive standard. In fact, Foxcroft begins its argument by claiming that the CPLR 5501[c] standard for judicial modification of jury awards replaces the prior "more restrictive" standard.
That statement is only partly true. The Court of Appeals rejected the "shock the conscience" standard," but it did not declare that the CPLR 5501[c] standard is a less restrictive standard for reviewing jury awards than looking to see if there is any valid line of reasoning and [*3]permissible inference which could possibly lead rational people to the conclusion reached by the jury on the basis of the evidence presented at trial (Kohen v Hallmark Cards, Inc., 45 NY2d 493, 499; Parkin v Cornell University, Inc., 78 NY2d 553, 526; Baker v Sweet Associates, 278 AD2d 615).
Foxcroft fails to acknowledge that the courts have consistently held that judicial review of jury awards must begin with the recognition that the assessment of damages in a personal injury action is primarily a factual determination to be made by the jury, and the jury award is accorded great deference (Lolik v Big V Supermarkets, 266 AD2d 759, 760). Not only is great deference owed to the jury's award, but the courts' discretion to modify a jury's award is only to be exercised "sparingly" (Coutrier v Haraden Motorcar Corp., 237 AD2d 774, 777; Cochetti v Gralow, 192 AD2d 974, 975). Thus, a jury award is only to be modified where it "deviates materially from what would be reasonable compensation" (CPLR 5501[c]; Hornicek v Yonchik, 284 AD2d 895, 896; Lolik v Big V Supermarkets, 266 AD2d 759, 760).
Notwithstanding the declarations that courts only modify awards "sparingly," the cases that both parties cite demonstrate that jury awards are being modified regularly by the courts. Foxcroft highlights one source of confusion with its protest that the jury award for pain and suffering in this case is "speculative" and "unsubstantiated." Foxcroft implicitly relies on the assumption that pain and suffering can be metered or that there is a scientific method for assessing damages for personal injuries. If quantifying pain and suffering actually was scientific, then identical results could be reproduced by repeating the "experiment." The process is actually so inherently unscientific, that different juries or judges give very different damages awards as demonstrated by the inconsistency of the awards in the cases cited by Foxcroft and Armstrong. It is ironic that those courts were so far apart after consciously attempting to apply the same standard.
The courts' contradictory determinations on these motions appear to flow from their failure to acknowledge the inherent inexactitude of jury awards. Instead of recognizing that variability is unavoidable, courts have used the perception that consistency is required by CPLR 5501[c] as a basis for stepping in and modifying the jury awards. Some of the decisions also fail to acknowledge that CPLR 5501[c] empowers the courts to use their own judgment in reviewing whether jury awards "deviate materially from reasonable compensation." Instead of exercising that discretion on review, those courts rely on the awards that were affirmed or modified in similar cases as the sole basis for deciding what is reasonable compensation. Of course, relying on contradicted decisions only produces more contradiction.
Failure to give jury awards the "great deference" interferes with the practical purposes served by that deference. Cases are complicated and determining awards involves much more than merely tallying up how many broken bones a plaintiff suffered and how long he or she was confined to a wheelchair. Verdicts are made as juries consider and balance all of the factors. Awards must be looked at in context to be appreciated.
When all factors are considered, juries usually get it reasonably "right," even when they appear to the casual observer to have treated one of the parties a little harshly. Although there are instances in which the Court has and will modify a jury award after considering all of the factors, justice is generally ill-served by ignoring the context, focusing solely on the injuries or on a particular aspect of an injury and then imposing a result that addresses only the narrow [*4]notion of what the injury is worth.
To illustrate, the Court also observes that most trials result from one party scuttling settlement negotiations by being unreasonable. Those parties generally make their unreasonability known to the jury at trial and the jury gives some measure of justice to their opponent. While a court focusing on the injury might be inclined to soften the blow and substitute its judgment for a harsh, but reasonable, jury award, in the long run letting a harsh jury award stand plays a vital role in convincing other litigants to act reasonably.
To illustrate, the Court notes that a few years ago an insurer was taking an arbitrary "no pay" position in all cases regardless of how meritorious. That practice stopped after juries awarded significantly greater damages than the insurer could have settled its cases for. Other times it is plaintiffs who make unrealistically high demands and receive less from the jury than the defendant had offered to settle the case for. Judicial interference with the logical consequences of parties' unreasonable behavior promotes injustice and inefficiency by rewarding unreasonable parties for being unreasonable.
The Court concludes that any coherent and predictable process for applying CPLR 5501[c] and promoting the aims of the jury-based civil legal system must begin with the recognition and acceptance of the fact that, given the inherent inexactitude of calculating damages, the range of "reasonable compensation" in any type of personal injury case will be extremely broad. In Murry v Witherel, 287 AD2d 926, 928-930, the court approvingly documented seven cases in which the pain and suffering range diverged by a factor of 40, from $75,000 to $3,000,000.
Next, courts should accept primary responsibility for reviewing awards rather than limiting their analysis to justifying post-trial decisions with determinations made in other cases. Each case differs from the next. Decisions in other cases can provide some guidance, but such decisions are not conclusive evidence either for or against the award in a particular case. Courts should not get caught in the trap of believing that every broken leg is the same as every other or artificially trying to create consistent awards.
As with the process that created all of the contradictory decisions, different courts will undoubtedly draw the lines of the reasonable range somewhat differently. The strength of the system that the Court proposes is that it is based on a clearer view of what CPLR 5501[c] requires. The resulting decisions should not be as contradictory or unpredictable so long as the courts adhere to the strict standard, attempt to apply it consistently and sparingly, and avoid trying to create the appearance of consistency in the awards by failing to acknowledge their inherent inconsistency.
The Court concludes that the jury's award for pain and suffering in this case could have ranged between $40,000 and $1,000,000 without deviating materially from reasonable compensation (CPLR 5501[c]). The Court rejects the upper limit of $4,800,000 used in Carl v Daniels, 268 AD2d 395. The other cases presented by Armstrong provide better guidance in setting the upper range of reasonable compensation in this case. The cases that defendant relies on to argue that the upper range of reasonable compensation is $65,000 or $100,000 are rejected.
 The Court has no cause to modify the $575,000 that the jury awarded Armstrong in this case for his pain and suffering. That award falls within the proper range, is reasonable and is easily understood considering all of the factors in the case. Armstrong suffered a very nasty [*5]injury that gave him considerable pain for an extended period. The court can only speculate, but if the award is higher than Foxcroft expected, it seems likely that Foxcroft's efforts to minimize the severity of Armstrong's injury and unsuccessful attempt to pin blame for the accident on Armstrong or urge that Armstrong is not really trying to work to full capacity backfired with the jury.
Finally, the Court notes that this motion is typical of most post-trial motions in that the movant never made what the Court considers a reasonable settlement offer. From the Court's vantage point, Foxcroft took calculated risks by failing to settle and playing hardball with the plaintiff at trial. Having chosen to follow that course, Foxcroft has no legitimate complaint about this jury award, which falls within the true range described by CPLR 5501[c]. Foxcroft is not entitled to either a reduction in the award or a second chance in front of a different jury.
Foxcroft next alleges that the $441,000 award for lost earnings cannot be justified by the evidence. Those moving to set aside jury findings of fact bear the very difficult burden of establishing that there is simply no valid line of reasoning and permissible inference which could possibly lead rational people to the conclusion reached by the jury on the basis of the evidence presented at trial (Kohen v Hallmark Cards, Inc., 45 NY2d 493, 499; Parkin v Cornell University, Inc., 78 NY2d 553, 526; Baker v Sweet Associates, 278 AD2d 615). Jury verdicts are not to be set aside unless the jury could not have reached the verdict on any fair interpretation of the evidence (Durkin v Peluso, 184 AD2d 940, 940-941). Cognizant, as the Court is, of the fact that "future damages cannot be computed with exactitude" (Kirschhoffer v Van Dyke, 173 AD2d 7, 10), the Court's analysis is limited to determining in the first instance whether or not there is any evidence upon which the jury's verdict can be understood or justified. If there is, then the court abuses its authority by substituting its opinion for the jury's.
Foxcroft's challenge to the lost earnings fails to meet its initial burden. Instead of setting forth facts demonstrating that the $441,000 could only have been arrived at by way of an invalid calculation, Foxcroft attempts to substitute its arguments regarding how the jury should have interpreted the evidence before it. Foxcroft ignores that merely crediting Armstrong with the two years of unemployment he suffered and then assuming a constant discrepancy of $3 per hour between his hourly wage at the time of the accident and now, produces lost earnings in excess of $300,000 over the course of his life expectancy. The jury was entitled to conclude that the discrepancy would continue to increase over time. The plaintiff's lost wages would climb to over $500,000 if the discrepancy in hourly rate is merely increased by $2.50 per hour. The $441,000 award is clearly justifiable in this case.
Turning now to the challenge to the jury's factual findings, Foxcroft has not merely failed to meet the initial burden of showing that there is simply no valid line of reasoning and permissible inference which could possibly lead rational people to the conclusion reached by the jury on the basis of the evidence presented at trial (Kohen v Hallmark Cards, Inc., 45 NY2d 493, 499; Parkin v Cornell University, Inc., 78 NY2d 553, 526; Baker v Sweet Associates, 278 AD2d 615). Foxcroft has attempted to avoid it by distracting attention with completely irrelevant arguments. Instead of addressing the relevant issue of whether there was any evidence supporting the jury's verdict of liability, Foxcroft attempts to substitute its analysis of other evidence to support its position. For example, Foxcroft argues that the jury should have rejected Armstrong's testimony that he was "primarily a laborer" and based on other evidence found that [*6]he was "an operator on the job." That kind of analysis of which evidence should be credited is irrelevant on these motions.
Foxcroft also claims that Armstrong failed to demonstrate that Foxcroft owed a duty to Armstrong, or that that duty was breached. Those claims again rest on Foxcroft's arguments regarding the conclusions that the jury should have made from the evidence, rather than on a showing that there was no evidence that Foxcroft either owned the LoadAll that injured Armstrong or that Foxcroft owed any duty to users of its equipment to make sure that a proper pin was used rather than the re-bar that was routinely substituted when the pins were lost or stolen. As there was evidence of ownership, duty and knowledge that the pins were being replaced with rebar and that Foxcroft failed to do anything to prevent accidents, Foxcroft cannot meet its burden of demonstrating that such evidence was not presented at the trial. Foxcroft's analysis also rests on erroneous arguments, such as that the jury was compelled to accept the testimony of its interested witnesses at face value or that Foxcroft's speculation regarding the meaning of different actions is the only way in which they can be understood.
In reviewing the jury's verdict and awards in light of the evidence that was presented, the Court concludes that the jury's findings are supported and justified by evidence in the record. Consequently, the Court has no basis for overturning the jury's conclusions and denies Foxcroft's motion with $100.00 costs.
This Memorandum constitutes the Decision and Order of the Court. All papers including this Decision and Order are returned to the attorney for Armstrong. The signing of this Decision and Order shall not constitute entry or filing under CPLR Rule 2220. Counsel is not relieved from the applicable provisions of that Rule respecting filing, entry and Notice of Entry.
SO ORDERED!
ENTER.
Dated: Troy, New York
February 5, 2004
 
JAMES B. CANFIELD
J.S.C.
1. Decision Date: February 05, 2004
2. 
3. 
4. 
5. 
6. 
7. 
8.